UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

APR 1 5 1999

Michael N. Milby, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, § <br> *ex rel.*, ROBERT MARTEL § <br> § <br> Plaintiffs, § <br> *versus* § <br> § <br> CHARLES HURWITZ, *et al.*, § <br> § <br> Defendants. § | CIVIL ACTION H-96-1164 |

# Opinion on Fees and Sanctions

1. *Introduction.*

　　Robert Martel brought a suit in the name of the United States of America against Charles Hurwitz. Martel's suit was dismissed because he was not the original source of information and filed the suit too late. Hurwitz moves for Martel to reimburse him for his attorney's fees and expenses under the False Claims Act, the inherent power of the court, and counsel's liability for excessive cost. 31 U.S.C. § 3730(d)(4) (1998); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); 28 U.S.C. § 1927 (1998). Martel moves for sanctions against Hurwitz under the civil rules. Fed. R. Civ. P. 11.

2. *Claims Act.*

　　Hurwitz has prevailed, but to recover his fees he must prove that Martel's complaint was for the purpose of extortionate harassment. 31 U.S.C. § 3730(d)(4). Because Martel was not the original source of information, he lacked the private knowledge to sue as a qui tam plaintiff. Furthermore, Martel knew that he was not the original source of information because he based this 1995 suit on media publications from 1991—"regurgitating politicized half-truths." *See Opinion on Dismissal 78.*

　　Because these articles were published, Martel easily knew that he was past the deadline to file suit. The last fraud on the federal government occurred in December 1988 and the articles were published in 1991. He did not file suit until 1995. *See Opinion on Dismissal 78.*

Documents from the FDIC show that Martel knew about the existing FDIC and OTS investigations of Hurwitz before he sued in 1995. Martel argues that before he filed this action, the FDIC and OTS had not disclosed their investigations of Hurwitz. Martel, however, was aware of the investigations. In a letter to the FDIC, Martel said that he had brought the False Claims action "in a spirit of full cooperation with the FDIC and the OTS." *Instrument 80, Exhibit E.* Even though Martel sued Hurwitz before the FDIC and OTS sued him, he was aware of the complex, now adversarial relation between Hurwitz and the government.

Martel is solely responsible for Hurwitz's attorney fees and expenses. Boyd was an agent for a disclosed principal—following Martel's instructions. Martel brought this action under his own name, and he would have benefitted if successful. Because of Martel's bad faith, he must pay part of Hurwitz's attorney's fees and expenses.

3. *Inherent Power.*

Martel sued Hurwitz in bad faith because he knowingly duplicated existing governmental investigations of Hurwitz. A court may assess attorney's fees through its inherent power when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).

Martel knew that the FDIC was prosecuting the claims judicially and that the OTS was prosecuting the claims administratively. He also knew that he lacked standing to sue and that the deadline to sue had passed. *See Opinion on Dismissal 78.* Because of Martel's bad faith, he must pay part of Hurwitz's attorney fees and expenses.

4. *Counsel's Liability.*

This sanction does not apply to either Martel or his attorney, Boyd. The court may require an attorney who unreasonably and vexatiously multiplies proceedings to pay the other party's excessive costs, expenses, and attorneys' fees. 28 U.S.C. § 1927. In this case, Martel is not the attorney, and Boyd is not primarily responsible for the abusive excess.

Hurwitz argues that both Martel and Boyd brought the case in bad faith and with an improper motive. Although Martel appears to have pursued a crusade, the statute does not apply because technically he is not the attorney. *See id.* § 1927.

The court finds, however, that Boyd's behavior as Martel's attorney is substandard for a reasonably prudent attorney—especially for a person of his education. Boyd has earned an LL.M. and is currently working on a J.S.D. from the University of California at Berkeley. He lived in Moscow to help draft the new Russian Constitution. He taught constitutional law in Armenia and advised members of its Constitutional Court. Boyd has also worked with the Institute for the Study and Development of Legal Systems to educate foreign judges and lawyers about the judicial procedures of the United States. Even if he were a run of the mill member of the California bar, Boyd clearly should have known not to promote this litigation.

5. *Civil Rules.*

Hurwitz moved for sanctions against Martel under the civil rules. Fed. R. Civ. P. 11. In response, Martel moved for sanctions against Hurwitz under the civil rules claiming that Hurwitz's claim was frivolous. Fed. R. Civ. P. 11. Recently, Hurwitz withdrew his claim, but Martel's claim remains alive. Martel's claim lacks merit; it was a petty adolescent "you're one too" exercise.

6. *Conclusion.*

The court will award Hurwitz $110,122.65 for attorney's fees and expenses under the False Claims Act and its inherent power. 31 U.S.C. § 3730(d)(4); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). The court will deny Martel's motion to sanction Hurwitz under the civil rules. Fed. R. Civ. P. 11.

Signed April 14, 1999, at Houston, Texas.

Lynn N. Hughes
United States District Judge